Good morning. Good morning, Your Honor. May it please the Court. My name is Peter Morris. I represent appellant Scott Brain. I will split our total time with co-appellant Ms. Cook. So we'll each take ten minutes. So I'll take ten minutes and she'll take ten minutes. You're not saving any rebuttal time? You're just gonna do a ten-ten? And then I was going to say I want to reserve one minute for rebuttal. So you're going to watch when it's eleven minutes, you will immediately sit down, right? Absolutely. Of course. We'll watch that. Okay. All right. I will focus on two fatal flaws in the District Court's ruling. First, the District Court erred in finding that Mr. Brain breached his fiduciary duty under ERISA Section 404 by retaliating against Ms. Robbins by causing her to be placed on administrative leave. Second, the District Court erred in ordering that Mr. Brain be removed as a trustee for retaliating against Ms. Robbins. Ms. Cook will address the ERISA Section 510 informant provision and other issues relating solely to her. Turning to the first fatal flaw, the District Court found that Mr. Brain breached his fiduciary duty for one sole reason, retaliating against Ms. Robbins by causing her to be placed on this finding five times in its judgment in order at ER2-3, paragraph number seven, ER8, third paragraph, ER71, paragraph 3B, ER75, last paragraph, and ER77, paragraph number four at the top of the page. In its answering brief, the Department of Labor, or DOL, claims that the District Court found that Mr. Brain breached his fiduciary duty for a second independent reason, namely, by failing to manage trust funds prudently and solely in the best interest of the trust funds participants and beneficiaries in violation of Section 404 of ERISA. This claim by the DOL is entirely without support in the record. In its order, the District Court stated that the DOL contended that Mr. Brain breached his fiduciary duty under ERISA Section 404 for three reasons. First, Mr. Brain failed to pursue all monies the trust funds were entitled to collect. Second, Mr. Brain failed to investigate any of Ms. Robbins' allegations against him. And third, that Mr. Brain retaliated against Ms. Robbins. And this is at ER68, last full paragraph. The District Court explicitly found that the DOL failed to establish the first two reasons. That's at ER69-70. Thus, it is clear and undisputed that the District Court concluded that Mr. Brain breached his fiduciary duty based solely on its finding that Mr. Brain retaliated against Ms. Robbins. Just to be clear, you're not challenging the finding of liability under 510? We are not. Well, I should be clear. Not with respect to the argument I'm making and with respect to Remedy. We have a 510 issue which Ms. Cook will address. But in other words, we are not contesting that the District Court improperly found that Mr. Brain retaliated under Section 510. All right. Thank you. Yes. Are you going to focus primarily on the two-hat requirement of the Supreme Court and what role Mr. Brain was playing at the time that Ms. Robbins was placed on administrative duty? Most definitely, Your Honor. Okay. All right. Okay. But before I do that, I do want to address specifically what ERISA says about employment decisions versus fiduciary duties. Under ERISA, employment decisions do not involve fiduciary duties. ERISA Section 404 enumerates the fiduciary duties that an employer or trustee owes to an ERISA plan and its beneficiaries and participants. Under Section 404, a trustee has four fiduciary duties. First, the duty to act exclusively to provide benefits to participants and their beneficiaries and to defray reasonable expenses of administering the plan. Second, the duty to manage plan assets prudently. Third, the duty to diversify. And fourth, the duty to follow plan documents. In sum, all of the four fiduciary duties constitute management of plan assets or administration of plan benefits. Moreover, employment decisions do not give rise to fiduciary liability just because they are in the employer's self-interest or may have a negative effect on the plan or its participants and beneficiaries. And that was stated in Pegram v. Herdrich, 530 U.S. 211 at 226, a 2000 case. Let me ask you this, counsel. Please. I take your point about these four duties and the challenging issue in this case. I have a little trouble making quite as clear a line of demarcation as you do in this case. So let's take Ms. Robbins out of the formula for a moment and just talk about a hypothetical. Let's assume for a moment that an employee of the entity at this point was involved in a systematic embezzlement of trust funds from the, in this case, the union funds. The employee. The employee. The employee is involved in embezzling this money. Yes. And let's assume further that the trustee realizes that this employee has the money somewhere and he wants to find out because it's offshore. And if he doesn't find where it is, they may not get the money back. This is, I know it's kind of far-fetched, but I'm just trying to see how this blends together. So in that situation, yes, this is an employee, but what the employee does and the employer does in managing this person can have an enormous impact on the value of the asset. Let's say $20 million were stolen, taken to Cayman Islands or wherever. Does the interrelationship of the employer and the employee and its potential impact on the fund get us into 404 in any way? I think only in this way. And this could happen under your hypothetical. If the employer, or the trustee in this case, in any way conspired with the employee to steal money from the funds, then that would absolutely bring in Section 404. So when you said earlier that employment decisions and the fiduciary obligations are like the Chinese wall, not quite so clear because this one kind of melds in between, right? I can accept that. However, I do want to make clear... It's a rare duck, I guarantee you that. Well, that and also to make clear, there was no employment decision in the facts that I stated. In other words, it is true that the employer conspired with the employee, so there's that notion, but there was no employment decision. Let's add that element to it. Let's just say that the question was whether this person should be fired or placed on administrative leave or somebody out of contact, the DOL or something like that. So there is an employment element to it. But you're saying that in that situation, maybe 404 is involved. Yeah, in that extreme situation where there is mismanagement of plan assets and the trustee was involved in the mismanagement of plan assets, then yes. What if the trustee didn't do anything wrong, except in this case, he became aware of the fact that the employee was stealing the money, embezzling the money, and he was trying to decide the best way to handle the problem to preserve the fund? Well, okay. So, you know, and I definitely hadn't thought about this, but... No, I said I'm just trying to understand the scope of 404. Understood, and yeah, I think this makes sense. If the trustee knew that the employee mismanaged plan assets or, you know, stole plan assets, it's the employer's fiduciary duty to protect the plan assets. So it would be the employer's fiduciary duty to do everything possible to get those assets back. So let's just say, for example, that there's some reason, whatever it might be, that the employer wants to take pity on the employee and doesn't want to, even though it would help the plan to terminate the employee so the employee couldn't keep stealing, then the employer, I believe, would be breaching his fiduciary duty by intentionally refusing to terminate the employee. So in these unusual situations, maybe there's a little bleed over in 404, but generally speaking, you've got the four duties and then the rest, employment is a separate issue. Absolutely, and certainly in this case. And in this case, I didn't see a whole lot of analysis by the district judge on the two-hat theory, if any. What's your take on that? Okay, and that gets to the point. In this case, there was absolutely no bleed over that Your Honor is talking about. Okay, so let's talk about the employer hat and the fiduciary hat. First of all, trustees and employers wear both. When an employer makes an employment decision, or a trustee in this case, that is a separate hat and involves a different ERISA statute section. As I said, as a matter of fact. Which is? Oh, yeah, sorry. 502A5, as opposed to 409. So this is a very important point on the bleed over. The bleed over that Your Honor was coming up with certainly does not include an employment decision that could be made in detriment to the plan benefits and the beneficiaries and participants. Okay, so employer hat, you have, and now I'm going to turn to the second point, which is the district court improperly found. Where am I on time? You're way down. You're six minutes and eight seconds. I can see that your co-counsel is steaming. Oh, I'm into her time. Oh, no. All right, let me, I see you get going. I'm not going to lunch with you guys. All right, let me make this point quickly. Removal is a remedy only for breach of fiduciary duty. That's section 409 of ERISA. 502A5 is the section that covers remedies for retaliation in violation of section 510. ERISA is explicit in including removal as a remedy for section 409, fiduciary duty breach. This court in Gabriel has very clearly stated that you cannot start reading ERISA to expand remedies. So, in other words, you can't read removal into section 502A5, which is what the DOL is asking. Let me just ask you one other quick question. And then I'll. Okay. All right. Let's say, arguendo, that I agree with you on this point. What do we do with this? Do we say the injunction is vacated? We're sending it back to the district court to do what? Yeah. It's actually quite easy. All that needs to happen here is that the court reverses the district court's ruling in joining Mr. Brain from acting as a fiduciary for the trusts and requiring him to show the district court's order and opinion when he is considered for a position as an ERISA fiduciary in the future. And here's why. All of the remedies under section 502A5 were already covered by the consent decree here. The consent decree entered into by almost all the trustees. And, in fact, Mr. Brain wanted to enter into the consent decree, and the DOL would not allow it. The consent decree gave Ms. Robbins $400,000, enjoined any section 510 violations, required training regarding section 510. And so all that this court needs to do is reverse the lower courts, the district court's decision, because all the remedies that Ms. Robbins and the other defendant are entitled to have already been issued. And just to be clear, in reversing the district court, we wouldn't be remanding to give the create 404 liability based upon what happened? No, because the DOL made the arguments, and the district court specifically rejected them. Thank you very much. Thank you. It's hard when there are two lawyers, I've got to tell you, no matter how good they are. I defer to Mr. Morris, Your Honor. May it please the court, my name is Melissa Cook, and I am representing myself and my two cooking associates in this appeal. I'd like to just reserve one minute for rebuttal. We'll do our best to help you. Thank you. Your Honor, I think the issue of attorney immunity is very crucial to the ruling in this case. It was, although argued on several occasions, not recognized by the district court. The cases cited in my brief stand for the proposition that attorneys don't have a duty to a third-party non-client. Rather, an attorney faced with a rogue and insubordinate employee is required to protect her clients, in this case, the Board of Trustees and the participants of the trust, from actions by an employee that could result in removal or defalcation of trust records, especially when the attorney has knowledge of the employee's past falsification of trust records and is aware that records are being removed. Counsel, let me, I really want to be careful of this because of the sensibilities of this, but let's use a hypothetical again. Let's assume for a moment that the attorney is, shall I say, intimately involved with a trustee. Isn't the rule a little different in that situation? Your Honor, the hypothetical you're referring to simply wasn't the case in this situation for months later. Like, for example, the state bar now, as I understand it, I don't know whether it's implemented the rule or is going to, that indicates that if an attorney has sexual relations with a client, they can be disbarred. Doesn't that play some role in one's analysis of whether an attorney in the hypothetical could potentially be culpable in some way? Your Honor, to the extent that that is the case, I'm not disagreeing, but that certainly wasn't the case here. You're down to one minute. Well, certainly my associate, Ms. Chang, had no such similar situation. And we think that, Your Honor, you need to really consider the expansion of remedies when attorneys are strictly trying to do their job and protect their client against insubordinate employees. Furthermore, I think while a lesser player in the case, Mr. Rice, the findings of the district court were wholly unsupported by any evidence and, in fact, supported by contrary evidence, not even recognized or mentioned in the 72-page findings that Mr. Rice was only terminated as a result of the independent decision-making of his employer with no input from any trustee or counsel. All right. Thank you very much. I appreciate it. All right. Let's hear from the government. You've got a lot on the plate here. Well, I think I can handle it in 20 minutes. I'm sure you can. Give us your name first. My name is Glare Byram, and I represent the Secretary of Labor in this matter. Mr. Brain raises challenges to the district court's finding that he breached his fiduciary duties in violation of ERISA section 404, but really he's seeking to conflate the district court's findings here. The district court didn't hold that his retaliation, that the 510 violation, automatically constituted a breach of his fiduciary duties. But with respect, isn't opposing counsel correct that an injunction for breach of fiduciary duty has to be based, if at all, upon a violation of section 404, not 510? Well, section 409 explicitly provides for removal of a fiduciary when there's a fiduciary breach, which the court found here. But that's 404. But to your question, there's nothing to say that the 510 violation here wouldn't support an injunction of removal supported by 502A5. But the Supreme Court has made it pretty clear, I think, out of this two-hat theory, that one of the first things you have to do in a situation like this is to determine what hat, in this case, Mr. Brain was wearing when he took the action that he did with respect to Ms. Robbins. Do you agree with that? Well, with respect to the two-hat theory, Mr. Brain was clearly acting as a fiduciary. That's what you're saying. But I'm asking you whether the district judge, whether he said specifically, I'm making this determination, did he undertake an analysis and review of the facts that determined that when Mr. Brain acted with respect to Ms. Robbins, that he was doing so with his fiduciary hat on? Yes, Your Honor. The district court— Where in the record? Well, the district court made—the whole tenor of the district court's opinion shows that this is a decision about plan administration. There were findings and just facts that the Auditing and Collections Department is an arm of the trust funds, is responsible for auditing and collecting overdue and unpaid contributions— I get all of that. If I understand the Supreme Court's law correctly on this, when you start out this analysis, the district court has to determine what hat the fiduciary was wearing. I understand the general gloss of what you're talking about, but where in the record does it say that Mr. Brain was acting as a fiduciary under 404 in this circumstance because blah, blah, blah, blah, blah? Where is that? Well, it found that Mr. Brain was a trustee on the joint board, which were— Oh, yeah, but that's easy. What did he do with that hat on? Which were responsible for administering the trust funds, and in his capacity as a trustee, Mr. Brain took actions to influence other trustees to cause them to place Ms. Robbins on administrative leave. Help me with this procedurally. This was an enforcement action brought by the department, is that correct? Yes, Your Honor. And the whole issue was whether or not there had been violations of ERISA, which happens when there's generally a violation of fiduciary duties, is that correct? Yes, Your Honor. It was an enforcement action for violations of ERISA section 510, actions to retaliate against Ms. Robbins and Ms. Rice, and a separate claim of fiduciary breach based on Mr. Brain. And there was a trial? There was a trial, a five-day trial. And at the conclusion of that trial, the district court made some findings? Yes, Your Honor. The district court found that Mr. Brain retaliated against Ms. Robbins in violation of ERISA section 510, that separately he breached his fiduciary duties under ERISA section 404, because by taking actions against Ms. Robbins to further his own personal interests, he was breaching his fiduciary duties because he was not acting solely in the interests of the participants and the beneficiaries who his responsibility goes to as a fiduciary. And during the trial, what was the position of Mr. Brain? With respect to his fiduciary duties? Yes. Well, again, it's undisputed that Mr. Brain was a trustee on these joint funds. And I mean, his whole, the whole role of the Audit and Collections Department is to act as an arm of the trust funds. I mean, Mr. Brain's job is that as a union representative, he's appointed as a trustee to oversee these trust funds. The trust funds then have this Audit and Collection Department, which performs work of administration, which is clearly a fiduciary duty. I mean, the definition of a fiduciary includes discretionary responsibility with respect to plan administration. Did Mr. Brain argue that he wasn't acting as a fiduciary in connection with any of these actions and that he was just making some other kind of employment decision? This argument is raised on appeal by Mr. Brain. Not in the trial? Not that I'm aware of, Your Honor. I mean, there may be, I mean, he was acting in his role as a trustee with respect to this entire time period. And so this argument has been raised on appeal. Let me ask you this. I know the Department took the position that his, if you will, scene to it that Ms. Robbins was placed on administrative leave was a breach of the fiduciary duty. That would normally be an administrative duty, would it not? He was also her employer, if you will. He was the head person of the entity for which she worked. The trust funds were Ms. Robbins' employer via the administration. He was the CEO, if you will. He was on the joint board responsible for overseeing administration of the trust funds. So he didn't have individual responsibility about employment decisions? The trustees as a whole were responsible for overseeing the trust funds. There's a sheet, if I can find the citation. This is from the record on page, this is a direct examination, the declaration of Scott Bryan. And I'm just looking at the first page, it's 282. I don't know where it is on the, let's see if it says on the record here. Anyway, it's a document number 274 filed 115-16. And he lists out what his duties are. It says he's the business manager and financial secretary of the union here. And it talks about what he does. And it's basically what any, if you will, CEO of a business entity would do. He basically ran the, now of course he was subject to the board. But it looks like he, if you will, was a CEO. So if he, if this is accurate, and that may have been contradicted somewhere, which I'm unaware of. But if that's accurate, why would not his action to put Ms. Robbins, or to see to it that Ms. Robbins was placed on administrative leave, part of his role as a business manager and not as a fiduciary of the plan? Well, I think it's important to note that the fiduciary breach here is not his decision to cause Ms. Robbins to be placed on administrative leave. The fiduciary breach here is that by taking these actions against Ms. Robbins, Mr. Brain was not acting solely in the interest of the participants and fiduciaries. He was acting to further his own personal interest and not the interest of the trust funds. And what were those interests in this case, as the department views it? Well, Ms. Robbins had engaged in protected activity. She had participated in a DOL investigation. Mr. Brain was the subject of that investigation. And she had participated in efforts to send a letter to the international union president about potential misconduct by Mr. Brain. So here Ms. Robbins is raising concerns about Mr. Brain's fiduciary conduct. And in response to that, Mr. Brain acts to silence her. And as a fiduciary, Mr. Brain should not have acted to silence Ms. Robbins for questioning his fiduciary conduct. This was retaliation? Yes, Your Honor. And is the retaliation something in ERISA that's based on section 404 or is it an independent section of that code? Well, it's well-established law that the same set of facts can give rise to multiple ERISA violations. And this court held that in Donovan v. Mazzola. And in this case, as the district court expressly noted in denying Mr. Brain's motion for a stay, the same set of facts was sufficient to give rise to both violations. Both the ERISA 510 violation that he retaliated against Ms. Robbins and the ERISA 404 violation that he was not acting in the best interest of the participants and the beneficiaries. So your position is that notwithstanding the Supreme Court's two-hat theory that you've got to determine what hat was being used, that it just kind of all melds together. The same set of facts brings him in violation of 510 and 404? The same set of facts give rise to violations of 510 and 404. But also, this clearly was a fiduciary action. Mr. Brain was acting as a fiduciary because this whole decision is about plan administration. The decision taken to outsource the work of the Audit and Collection Department to a third party to perform their work, that was a decision about who should perform these services to the plan, which Mr. Brain caused that action to be taken in response, in order to retaliate against Ms. Robbins. So the fact that what Ms. Robbins was doing related directly to the plan bleeds over into 404. Is that your position? It does. It certainly dictates that Mr. Brain was acting as a fiduciary when he took these actions because it was all about plan administration. And that's what the district court found, that there was a violation of these provisions. Of both ERISA 404 and separately of 510. Yeah. And... Have you got any case law that you would cite to us where an appellate court has upheld an injunction like this one, where the alleged violation occurred under both 510 and 404? Anything that you think is relatively comparable? I can't think of a specific case where 510 and 404 were specifically at issue, but I would note that ERISA provides for broad remedies to address the interests of participants and beneficiaries. I would note that 409 specifically provides for removal of a fiduciary and that 502A5, which provides relief for violations of ERISA section 510, expressly provides for injunctive relief and other equitable relief. Which section are you citing, 501? 502A5 would provide a remedy for violations of ERISA section 510. It expressly provides for injunctive and other equitable relief. So your position is that under the circumstances, even if no section 404 violation were detailed by the court, that what was detailed would fit into 502A8 or 9, is it? 502A5. A5, excuse me. Is sufficient to sustain the injunction? Yes, Your Honor. And the district court quite reasonably concluded that Mr. Breen was not acting solely in the interest of participants and beneficiaries when he caused the trustees to take an adverse action against Ms. Robbins for communicating with the DOL protected conduct in a separate form of protected conduct. Her efforts to raise concerns about his potential ERISA violations to the international union. Is the causation standard but-for or is it a substantial or a motivating factor causation? In this case, the district court expressly applied a but-for standard of causation, which was supported by extensive factual findings. And that was done with respect to each 510, each adverse action supporting the 510 violation. So the department's position is that the but-for standard is not the appropriate causation standard. But this issue is not raised on appeal because the district court expressly improperly applied the but-for causation standard. Ms. Cook raised a challenge to the district court's finding that she did not have attorney immunity under ERISA. But the district court properly found that Ms. Cook does not have attorney liability immunity from ERISA liability. The district court properly noted that ERISA imposes duties on Ms. Cook apart from those that arise from her role as an attorney. Ms. Cook may not knowingly participate in a fiduciary breach and she may not violate ERISA section 510, which makes it unlawful for any person to take retaliatory actions. Moreover, the district court found that the Cook defendant's actions went beyond providing legal advice. The district court found that some of Ms. Cook's actions were the result of her relationship with Mr. Brain. And it also found that her advice was motivated by a desire to retaliate against Ms. Rice and Ms. Robbins and Mr. Rice. And Mr. Brain's 510 challenge to but-for causation is in essence just a challenge to the district court's factual findings. And the district court's factual findings here were supported by extensive evidence. The district court did credibility analysis for a dozen witnesses. The district court expressly went through each of the adverse actions and made just a handful of numbered factual findings with respect to each of these conclusions. So there's no clear error that Ms. Cook or Mr. Brain have raised with respect to any of the district court's factual findings. And for that reason, the but-for causation claim challenge fails. And also Ms. Cook's challenges, Ms. Cook raises numerous challenges in her brief to the district court's factual findings. But none of those rise to the level of clear error. Unless there's a legal error by not segregating what actions fell under 404 and the other under 510, potentially. Well, the district court did engage in separate analysis for the 510 violations and the 404 violation. Again, what was the record citations for those? I don't have the exact page numbers. But I do know that the district court gave headings for each of the each of its causation findings. If there are no further questions from the court. I think not. Thank you all, counsel. It's a very complex case. But an important case. And we thank you for your fine presentations. Thank you. The case just argued is submitted. You have any time left? I mean, you went way over. You have no time left. You did a fine job. I want you to know. That's a good job. Okay. Okay. Very good. Thank you all. The case just argued is submitted.
judges: Schroeder, M. Smith, Drain